UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALICIA MICHELLE CHIVERS and CRAIG CHIVERS,  Plaintiffs,  v.  CENTRAL NOBLE COMMUNITY SCHOOLS AND ITS EMPLOYEES, GERALD WELLMAN, and BRIAN GILLESPIE,  Defendants. | CAUSE NO.  1:04-CV-00394 |

## OPINION AND ORDER

After oral argument on July 25, 2005, defendants' Motion to Quash Subpoena Duces Tecum of Attorney Jon Bailey was DENIED, and Bailey was ordered to submit to a deposition at the Fort Wayne federal courthouse no earlier than August 8, 2005, and no later than August 18, 2005. (*See* Docket # 53.)  This order will review the rationale for the denial of the motion to quash, and set forth certain restrictions in the nature of a protective order for the upcoming deposition.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Alicia Chivers ("Alicia") and her father, Craig Chivers, filed a complaint on October 21, 2004, against Central Noble Community Schools ("CNCS"), and its employees, principal Gerald Wellman, and teacher Brian Gillespie, contending that defendants violated the provisions of Title IX, by discriminating against Alicia, who was a CNCS student, on the basis of her sex after Gillespie sexually harassed her. (Docket # 1, 31.)  More specifically, Plaintiffs contend that CNCS and Wellman had actual knowledge of Gillespie's actions and the authority to institute corrective measures, but were deliberately indifferent to Alicia's right to be free of

Gillespie's sexual misconduct. (*Id*.)

Plaintiffs served a subpoena on Attorney Jon Bailey; Bailey provided legal advice to CNCS and Wellman during the investigation and subsequent remedial action of Gillespie, and is associated with the same law firm as CNCS's and Wellman's trial counsel in this case. (Renewed Mot. to Quash at Ex. A.)  Specifically, the subpoena commands Bailey to submit to a deposition and to produce:

> All tape recordings, video recordings, electronic communications and written documents, including any notes and draft versions of documents, related to your participation in the investigation and action taken by Central Noble Community Schools in response to the Chivers complaints about Brian Gillespie's conduct towards Alicia Michelle Chivers in October 2003 that have not previously been produced by the Defendants in this cause.

(*Id*.) CNCS and Wellman moved to quash the subpoena, contending that it violated the attorney-client privilege, the work-product doctrine, and is disruptive to Bailey's attorney-client relationship with CNCS and Wellman. (Docket # 38, 43.)  After oral argument by the parties, the Court denied the motion to quash, but acknowledged its intent to issue a protective order *sua sponte* setting forth certain restrictions for the deposition. (Docket # 53.)

## LEGAL STANDARD

The attorney-client privilege protects confidential communications between attorney and client. *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003).  The Seventh Circuit applies the following general principles of attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

*Johnson v. Rauland-Borg Corp*., 961 F. Supp. 208, 210 n.5 (N.D. Ill. 1997) (quoting *United*

2

*States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). "Communications from the attorney to the client should be privileged only if the statements do in fact reveal, directly or indirectly, the substance of a confidential communication by the client." *Id*. A claim of attorney-client privilege is not a blanket claim, but must be made and sustained on a document-by-document or question-by-question basis. *Makula v. Sanwa Bus. Credit Corp.*, No. 96 C 7138, 96 C 7695, 1997 WL 460935, at *2 (N.D. Ill. Aug. 8, 1997). "[T]he scope of the attorney-client privilege must be construed narrowly 'to protect the search for the truth.'" *Id*. (quoting *United States v. Hamilton*, 19 F.3d 350, 353 (7th Cir. 1994)). The attorney-client privilege may be waived by the client voluntarily disclosing the privileged information to a third person, or through asserting claims or defenses that put an attorney's advice at issue in the litigation. *Id*.

The work-product doctrine is broader than, and distinct from, the attorney-client privilege. *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000). The work-product privilege protects materials "prepared in anticipation of litigation." *Id*. However, in contrast to the attorney-client privilege, the work-product privilege is a qualified privilege and may be overcome if "the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way." *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 285 (N.D. Ill. 1997).

## DISCUSSION

CNCS and Wellman moved to quash Bailey's deposition, asserting that the subpoena targets attorney-client privileged information and work-product privileged documents; they further contend they have asserted no defense which would cause waiver of these privileges.

3

(Renewed Mot. to Quash ¶¶ 5, 10.)  In addition, they argue that the subpoena is disruptive to Bailey's attorney-client relationship with CNCS and Wellman, and the command for production of documents is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (*Id*. ¶¶ 11, 14.)  CNCS and Wellman further contend that if the Court orders Bailey's deposition to occur, Plaintiffs' inquiry should be restricted to the time period of October 3, 2003, the date that the allegations were made known to CNCS, to October 10, 2003, the date Alicia withdrew from CNCS, as any inquiry beyond this point would not have been for the benefit and safety of Alicia, but rather for the benefit of the general population and for purposes of disciplining Gillespie, neither of which are relevant to Alicia's sexual harassment claim. (Reply Brief at 7.)

Plaintiffs, however, disagree. They contend that while the requested information may indeed have been privileged, CNCS and Wellman waived the attorney-client privilege by asserting defenses that placed their counsel's advice at issue during the deposition of Dr. Stone, the prior Superintendent of CNCS. (Response Brief at 4.)  Furthermore, Plaintiffs assert that given Dr. Stone's testimony, and because it can be anticipated that CNCS and Wellman will argue that they responded reasonably to Alicia's complaints, the information Bailey possesses is vital. (*Id*.)  After all, as Plaintiffs observe, they must prove that the defendants had actual knowledge of the sexually harassing conduct, and that the defendants' response to it was "clearly unreasonable" under the circumstances. (*Id*.); *see Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 630 (1999).

After oral argument by the parties, the Court denied the motion to quash Bailey's deposition because "it would be premature to quash a deposition based on [a blanket] assertion

4

of privilege." *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 419 (N.D. Ill. 1987); *see generally Pharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 773 (N.D. Ill. 2005) ("Motions to quash are within the sound discretion of the court."). Rather, "the more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary." *Marco Island*, 117 F.R.D. at 419. Therefore, the Court ordered Bailey's deposition to take place at the Fort Wayne federal building where it may rule on any objections as they arise during the deposition, and acknowledged its intent to issue a protective order to limit the subject matter of the deposition.

As to the protective order, the Court has considered the competing interests in this case and has reviewed the portions of Dr. Stone's deposition transcript placed in the record. Although defense counsel claim they have no intention of arguing that CNCS and Wellman were reasonable, or at least not "clearly unreasonable," in consulting with their lawyers and obtaining advice, the problem goes deeper than that. (Reply Brief at 2.) Here, Dr. Stone did some of the investigating, but some of the investigating was done by counsel, and apparently by October 15, 2003, by them alone. (Dep. of George Stone at 52, 58, 60.) This by itself would probably be enough to allow the inquiry of Bailey, but there is more. *See Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1096 (D.N.J. 1996) (finding that defendant had waived the attorney-client privilege by fusing the roles of internal investigator and legal advisor). CNCS and Wellman apparently believe that the written reprimand they gave to Gillespie for engaging in correspondence with Alicia that "included sexual overtones and sexually provocative conduct" was a reasonable remedial measure, but this position has to be assessed in light of the fact that Dr. Stone, one of the investigators, does not know if such conduct violates CNCS's sexual

5

harassment policy. (*See id.* at 73-74.)  Indeed, CNCS did not even consider Alicia's complaint about Gillepsie's conduct, through her father, to be one of sexual harassment, but rather merely a charge of "inappropriate behavior." (*Id.* at 40.)  This nuance apparently came from CNCS's attorneys, not Dr. Stone, who has no opinion about whether CNCS's policy against sexual harassment was violated because, "I'm not an attorney, I don't know." (*Id*. at 73-74); *see Makula*, 1997 WL 460935 at *3 (determining that defendant waived the attorney-client privilege because, while his attorney denied that defendant would use the advice of counsel defense, defendant was clearly attempting to use it in his deposition); *Chamberlain Group v. Interlogix, Inc.*, No. 01 C 6157, 2002 WL 467153, at *2 (N.D. Ill. March 27, 2002) (quoting *Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171, 1175 n.1 (7th Cir. 1995)) ("The implicit waiver rule applies "when the client asserts claims or defenses that put his attorney's advice at issue in the litigation"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (defendant cannot use the attorney-client privilege as both a sword to defeat plaintiff's arguments and a shield to protect against disclosure of the basis for its affirmative defense).

In short, Dr. Stone testified that he essentially turned the investigation of Alicia's charges over to CNCS's attorney (presumably, Bailey), and it was counsel who assembled the facts, drew the conclusions, and constructed the remedial response. (*See* Stone Dep. at 73-74; Reply Brief, Ex. 18.)  To prevent Plaintiffs from discovering what was done by counsel and why, would be tantamount to giving CNCS and Wellman both the "sword" (i.e., the argument that "we were reasonable because we had our attorney's investigate the charge and craft a response") and the

"shield" (i.e., "what our attorneys did, and why they did it, is privileged").[1] *Cf. Pray v. New York City Ballet Co.*, No. 96 Civ. 5723 RLC, 1998 WL 558796, at *2 (S.D.N.Y. Feb. 13, 1998) (determining that the attorney-client privilege was not waived when plaintiff was given access to all facts and aspects of the investigation, allowing plaintiff to sufficiently contest defendant's assertion that its response to the sexual harassment claims was sufficient).

Finally, the information requested by Plaintiffs is likely to speak directly to whether CNCS and Wellman had actual knowledge of all of the circumstances surrounding the allegations and whether their response to such allegations was "clearly unreasonable," the two key elements in a Title IX claim. *See Chevron*, 974 F.2d at 1163 (stating that defendant "cannot invoke the attorney-client privilege to deny [plaintiff] access to the very information that [plaintiff] must refute" in order to prove their claim); *Harding*, 914 F. Supp. at 1096, 1103 (finding that defendant placed the investigation of sexual harassment claim at issue and the doctrine of fairness dictated waiver of the attorney-client privilege to allow probing of the substance of the investigation). Likewise, as to work product, Plaintiffs have requested materials pertaining to CNCS's investigation and remedial action of Alicia's allegations, information which is directly relevant to Plaintiffs' cause of action and which Dr. Stone was patently unable to provide. (*See* Renewed Mot. to Quash, Ex. A.; Stone Dep. at 40, 52, 60, 73, 74, 84, 85.)

As a general consideration, while Bailey practices with the same law firm as defense counsel in this case, Bailey is not appearing here as trial counsel. Furthermore, even if he was, as discussed *supra*, the Court finds that no other means exist to obtain the requested, indeed

---

[1] Dr. Stone indicated that the Division of Family and Children, Noble County Prosecutor, and Indiana State Police also investigated the allegations; these investigations, however, were conducted with a view that criminal charges might be brought, not with the purpose of determining a reasonable remedial response by CNCS to Alicia's allegations. (*See* Stone Dep. at 52.)

7

important, information. *See generally Cook, Inc. v. C.R. Bard, Inc.*, No. IP 00-1791-C(B/S), 2003 WL 23009047, at *2 (S.D. Ind. Sep. 18, 2003) (finding that depositions of opposing counsel are appropriate in limited circumstances); *Joslyn Corp. v. RTE Corp.*, No. 86 C 2319, 1988 WL 102104, at *1 (N.D. Ill. 1988).  Therefore, CNCS's and Wellman's argument that Bailey's deposition should not take place because it will disrupt the attorney-client relationship, is defeated by the factors weighing in favor of proceeding with the deposition.

Therefore, considering all of the foregoing, the Court *sua sponte* orders that Bailey's deposition will be limited to inquiring about his knowledge concerning the investigation and actions taken by CNCS in response to Plaintiffs' complaints about Gillespie's conduct towards Alicia in October 2003.  The deposition, however, will not be limited temporally (i.e., to events occurring between October 3, and October 10, 2003) as CNCS and Wellman requested, given that the investigation of Alicia's charges did not begin until October 9, 2003. (*See* Stone Dep. at 72.)  Moreover, there is some indication that although Alicia withdrew from CNCS on October 10, 2003, she and her father continued to discuss the matter with Wellman afterward to determine "what was going on in the matter." (Reply Brief, Ex. 18.)  This suggests that Plaintiffs were truly interested in the remedial measures CNCS would undertake, presumably with a view to eventual re-enrollment.  This makes CNCS's and its counsel's conduct relevant, at least until Plaintiffs learned of Gillespie's reprimand.

## CONCLUSION

Therefore, for the reasons stated herein, the Court affirms the denial of the renewed motion to quash (Docket # 43), and ISSUES *sua sponte* a protective order in favor of CNCS and Wellman to limit Bailey's deposition to inquiring about his knowledge concerning the

8

investigation and action taken by CNCS in response to Plaintiffs' complaints about Gillespie's conduct towards Alicia Chivers in October 2003.

    SO ORDERED.

    Enter for this 4th day of August, 2005.

                                     /S/ Roger B. Cosbey
                                     Roger B. Cosbey,
                                     United States Magistrate Judge